Warren E. Gluck
Judith R. Nemsick
Elliot A. Magruder
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Phone: (212) 513-3200
Fax: (212) 385-9010
warren.gluck@hklaw.com
judith.nemsick@hklaw.com
elliot.magruder@hklaw.com

*Attorneys for Applicants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>OPUS TRUSTEES LIMITED IN ITS CAPACITY AS TRUSTEE OF THE MANET TRUST and RENOIR INVESTMENTS LIMITED,<br><br>Applicants.<br><br>REQUEST FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782 | Civil Action No. 19-Misc. _____ |

### DECLARATION OF LEE FALLA IN SUPPORT OF
### *EX PARTE* APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782

I, Lee Falla, hereby declare as follows:

### Introduction

1.     I am a director of Opus Trustees Limited ("**Opus**"), the trustee of The Manet Trust (the "**Trust**").  Applicant Renoir Investments Limited is an asset of the Trust (together with the Trust, the "**Applicants**").

2.     As director, I am fully familiar with the facts relating to this application and make this declaration based on my own personal knowledge of the matters asserted herein and review of records maintained by Opus in the ordinary course of business.

3. I submit this declaration in support of this application to the United States District Court for the Southern District of New York under 28 U.S.C § 1782 (the "**1782 Application**") wherein Applicants seek discovery in the form of subpoenas for the production of documents that are located in the United States and in the possession, custody and control of several New York banks (as defined below, the "**New York Banks**") for use in reasonably contemplated foreign civil proceedings by Applicants in the island of Guernsey ("**Guernsey**") in order to recover $1.3 million described further below (the "**Foreign Proceedings**"). Applicants plan to allege in the Foreign Proceedings civil fraud and unjust enrichment, which are causes of action under Guernsey law, and/or to seek declaratory and other relief pursuant to the Trusts (Guernsey) Law, 2007.

4. Discovery is being sought for the purpose of locating bank accounts, assets, the identifies of the beneficial owners, counterparties, related parties, intermediaries, as well as sufficiently connected parties and successors in interest, so that Applicants can locate and recover the stolen funds.

**Relevant Parties and Background**

5. The Trust is a trust created by an instrument of settlement dated 21 January 2014 and made between (1) The Board of the Monet Settlement as settlor and (2) the Trustee. The Trust is governed by the laws of Guernsey.

6. Opus is a licensed trust company, incorporated under the laws of Guernsey with registered number 39281 and having its registered office at 9-12 The Grange, St. Peter Port, Guernsey, GY1 3JL.

7. Renoir is a limited company incorporated under the laws of Guernsey with registered number 57825 and having its registered office at 9-12 The Grange, St. Peter Port, Guernsey, GY1 3JL. The corporate directors of Renoir are Opus Management Limited and Plutus

Limited, both of which are part of the wider Opus group.

8. Cezanne Ltd. FZE ("**Cezanne**") is a company incorporated in the Fujairah Media Free Zone, United Arab Emirates ("**UAE**") (permitted by its trade licence to carry out business and management consultancy activities) and having its registered office at Creative Tower, PO Box 4422, Fujairah, UAE.  Cezanne is owned by Renoir and was established as an investment vehicle with the intention of making investments for the benefit of the beneficiaries of the Trust.

9. Cezanne was incorporated by Vital Corporate Solutions FZ LLC ("**Vital**"), a limited liability company formed under the laws of the UAE with its head office at Office 1401, Jumeirah Bay X2 Tower, Cluster X, Jumeirah Lake Towers, Dubai, UAE.  Vital provides comprehensive corporate services, including assistance with incorporating companies in the UAE Free Zones.  Amanda Perry ("**Ms. Perry**") is the principal of Vital.

10. Ms. Perry is also the sole director of Cezanne.  As director of Cezanne, Ms. Perry was responsible for the actions of Cezanne.

11. Société Bancaire et Fiduciarie Privée ("**SBFP**") is, upon information and belief, a fictitious offshore financial institution which falsely purports to be incorporated and legally registered under the laws of Moheli, an autonomous island in the Union of the Comoros (the "**Comoros**").

12. According to its website (http://www.sbfprivee.com), SBFP is an "international financial institution that provides services to businesses and persons worldwide", including "current accounts … money transfers [and] payment services … operated by experienced professionals from world-class banks and financial institutions.  Also according to its website, SBFP maintains a registered office at Rue Bandar Es Salam 10, Fomboni, Comoros, a representative office in Ukraine and a correspondence address in Lithuania.

13. Credit Foncier Comoros ("**Credit Foncier**") is, upon information and belief, a fictitious offshore financial institution which falsely purports to be incorporated and legally registered under the laws of the Comoros and maintaining a registered office at Place de France, Moheli, Comoros Islands.

14. According to its website (http://www.cfcomoros.com), Credit Foncier is in the business of "commercial and private banking for individuals and customers," which provides, among other services, international money transfers, letters of credit, and deposit accounts. Also according to its website, Credit Foncier maintains "contact centers" in Lithuania, Estonia and the UAE.

15. According to public records, the website domain names for SBFP and Credit Foncier are each owned by Federico Cappuzzo ("**Cappuzzo**"). He is also the sole shareholder and ultimate beneficial owner of Slovakian companies that have nearly the same names as SBFP and Credit Foncier: Société Bancaire et Fiduciarie Privée s.r.o. and Credit Foncier International s.r.o.

### Cezanne's Bank Account at SBFP

16. In December 2017, Opus sought to invest approximately $1.3 million in an Indian company (the "**Investment**").

17. To fund the Investment, Opus planned to use funds held by Renoir which Renoir would transfer to Cezanne via two banks in the UAE, namely Noor Islamic Bank and Mashreq bank. (As explained further below, the latter bank was not in fact used when the transaction took place).

18. The direct investment in the Indian company would be made by Cezanne through its supposed bank account at SBFP. Vital told Opus that it received legal advice confirming the use of Cezanne as a suitable vehicle for investing in India.

19. As part of its due diligence on SBFP, Vital claimed that it had opened multiple accounts for its clients at SBFP and was generally satisfied with its services. Vital also advised the Trustee that the Comoros and SBFP were optimal investment conduits because accounts could be opened quickly and funds would be disbursed in short order. A true and correct copy of a December 7, 2017 email from Vital to Opus confirming this is attached hereto as **Exhibit A**.

20. Vital also advised that SBFP had visited its offices in March 2017 to explain its offshore banking services in a presentation. SBFP represented that it was duly licensed as an offshore financial institution in the Comoros and registered by the Mwali (Moheli) International Services Authority. A copy of SBFP marketing material provided by Vital to Opus is attached hereto as **Exhibit B**.

21. In November 2017, Vital made arrangements to have an account opened by Cezanne at SBFP (the "**Cezanne Account**"), which would be used to disburse funds for the purposes of the Investment.

22. On November 23, 2017, Vital received an email from Daria Chekhova, a purported Client Relationship Manager at SBFP, confirming that the Cezanne Account had been opened. A true and correct copy of this email from Daria Chekhova to Ms. Perry is attached hereto as **Exhibit C**. Vital also corresponded with Laura Meier, the purported International Business Development Manager at SBFP.

23. Ms. Chekhova also advised Vital that the first transfer would need to be made into the Cezanne account within two weeks of the account opening. *Id.*

### Renoir Transfers $1.3 Million to Cezanne, but the Funds Are Inaccessible

24. On December 14, 2017, Renoir transferred the Investment funds to Cezanne via two wire transfers, each in the amount of $650,000, from its accounts at Lombard Odier to be

routed through UAE-based Mashreq Bank and Noor Islamic Bank respectively (together, the "**Renoir Transfers**").  True and correct copy of the payment instructions for the Renoir Transfers are attached hereto as **Exhibit D**.

25. The payment details of the Renoir Transfers reference Cezanne.

26. "Credit Foncier, Dubai UAE," and not SBFP, is named as the beneficiary bank of the Renoir Transfers.  *Id.*  No explanation has been provided for this discrepancy.

27. According to the payment instructions that accompanied the Renoir Transfers, Citibank, New York ("**Citibank**") is named the correspondent bank for the first Renoir Transfer, and Deutsche Bank Trust Co. Americas ("**DBTCA**") is named as the correspondent bank for the second Renoir Transfer.  *Id.*

28. Neither Opus nor Cezanne received a SWIFT transfer confirmation from DBTCA or Citibank.

29. Wire transfer instructions from SBFP confirm the details of the Renoir Transfers, including that DBTCA and Citibank were the intended correspondent banks.  Copies of "Wire Instructions for SBFP. Currency – USD" for each Renoir Transfer are attached hereto as **Exhibit E**.

30. On December 17, 2017, Abraham Ong, the office manager of Vital, confirmed to the Trustee that the first Renoir Transfer of $650,000 had been deposited in the Cezanne Account, but that the second Renoir Transfer, which was due to be routed through DBTCA and Mashreq Bank, had been treated as null and void.  A true and correct copy of this email is attached hereto as **Exhibit F**.  Accordingly, the second Renoir Transfer, now in the amount of $660,000 (to cover bank charges), was routed through Noor Islamic Bank instead of Mashreq Bank, with the correspondent bank being Citibank, as per a third payment instruction issued to Lombard Odier.

A true and correct copy of this payment instruction is attached hereto along with the confirmation form SBFP as **Exhibit G**.

31. On December 20, 2017, Ms. Perry confirmed to the Trustee that the second Renoir Transfer of $660,000 had been deposited in the Cezanne Account. A true and correct copy of this email is attached hereto as **Exhibit H**.

32. The principal beneficiary of the Trust then requested Vital to transfer the $1.3 million to an Indian bank to fund the Investment.

33. On December 21, 2017, Vital attempted to transfer the monies out of the Cezanne Account to India. For unspecified reasons, the transfer was unsuccessful.

34. Vital made several requests to SBFP for assistance and sought an explanation regarding its inability to access the funds.

### SBFP Refuses to Return the $1.3 Million via Wire Transfer and Instead Issues a Fraudulent Cheque

35. During the period the funds in the Cezanne Account were inaccessible, the Investment in the Indian company was otherwise fulfilled.

36. Consequently, Vital directed SBFP to return the funds to the Cezanne Account.

37. After months of silence, SBFP refused Vital's request to return the Investment via wire transfer, and instead offered to issue Cezanne a cheque from Credit Foncier.

38. In an April 5, 2018 email to Ms. Perry, Kataryna Ryzovska, a purported Client Relationship Manager at SBFP, claimed that only a cheque could be issued to Cezanne based on Vital's "refusal to provide information reasonably requested by SBFP [and] refusal to cooperate with SBFP in [an] investigation of violations." Additionally, she informed Ms. Perry that "the compliance department has resolved to close the account Cezanne." A true and correct copy of the April 5, 2018 email from Ms. Ryzovska to Ms. Perry is attached hereto as **Exhibit I**.

39.     On April 6, 2018, Ms. Perry responded that Vital had not received a request for cheque details and that the Renoir Transfers were only purportedly "recredited" to the Cezanne Account on April 4, 2018. *Id.* (containing a true and correct copy of the April 6, 2018 email from Ms. Perry to Ms. Ryzovska).

40.     On April 16, 2018, Ms. Ryzovska emailed Vital stating that the cheque would be "issued in the name of the company the corporate bank account was opened for." A true and correct copy of the April 16, 2018 email from Ms. Ryzovska to Ms. Perry is attached hereto as **Exhibit J**.

41.     On April 20, 2018, Credit Foncier issued a cheque to Cezanne in the amount of $1,305,017.08 (the "**Cheque**"). A true and correct copy of the Cheque is attached hereto as **Exhibit K.**

42.     The contact information for the Credit Foncier issuer included the email address info@creditfoncierkm.com and the website http://www.creditfoncierkm.com. As of March 2019, this domain name cannot be found.

43.     SBFP provided no explanation as to why the Cheque was issued by Credit Foncier, even though SBFP had confirmed that: (1) it held the Cezanne Account; (2) Vital accessed the Account through SBFP's website; and (3) a "Client Relationship Manager" at SBFP purportedly "closed" the account.

### UAE Banks Refuse to Cash the Cheque

44.     All banks in the UAE refused to cash the Cheque, including Noor Bank through which Renoir had transferred the $1.3 million. Specifically, the Cheque would not clear any bank's internal compliance protocols.

45.     Vital repeatedly informed SBFP that multiple banks refused to clear the Cheque.

As a result, Vital asked SBFP to cancel the Cheque and instead wire transfer the Investment to a local bank account that Vital planned to open on behalf of Cezanne.

46. On July 30, 2018, the Compliance Department at SBFP advised via email that "unfortunately we need to notice that the only possible way to give your funds back is by cheque. Any transfers are not possible." A true and correct copy of this email exchange is attached hereto as **Exhibit L**.

### Vital Confirms that SBFP and Credit Foncier Are Fraudulent Institutions

47. Realizing that both SBFP and Credit Foncier were almost certainly sham banks that had stolen the $1.3 million in the Cezanne Account, Vital contacted government agencies in the Comoros and the central bank in the UAE via its online portal. A true and correct copy of an email from Vital to the Comoros Embassy in London is attached hereto as **Exhibit M**.

48. On August 6, 2018, an Honorary Counsel at the Comoros Embassy in London responded that "[t]here are a number of clear indicators that you and/or your client may have been the subject[] of a scam." *Id.* (containing a true and correct copy of the August 6, 2018 email).

49. According to the Honorary Counsel:

1. There are no "off-shore" banks or any such similar service providers in the Comoros.

2. SBFP does not appear on the Central Bank's list of accredited and licensed banks in the Comoros.

3. Their Contacts page only offers Skype communication.

4. Their listed numbers are in the UK and South Africa. Nobody answers the UK number and it is diverted to a mobile number.

5. Their [Know-Your-Customer documentation] is not compliant as they process everything through e-mail not [via] the required examination of the original.

6. Their website … corresponds with [an] IP address … registered in Stockholm, Sweden, and hosts other seemingly dubious websites.

9

50. Accordingly, the Comoros Embassy found no "direct Comoros nexus" and suggested that Vital contact the police in the UAE.

51. The UAE central bank did not respond to inquiries from Vital made through the bank's online portal.

52. Vital also contacted Credit Foncier de France ("**Credit Foncier France**"), a well-known commercial mortgage bank and a subsidiary of a French banking group that serves nearly 40 million customers.

53. On September 6, 2018, Isabel Clesca of Credit Foncier France informed Vital that SBFP and Credit Foncier are "a fraud" and that the documents submitted by SBFP to Opus and Vital in conjunction with the Investment were "forgeries". A true and correct copy of this email is attached hereto as **Exhibit N**.

54. Ms. Clesca advised that Credit Foncier France "only … grant[s] real estate loans" and therefore it does not "open, and never have neither [sic] any account to receive funds." Accordingly, Credit Foncier France's name was "used illegally … to get money" and that "these usurpers do not belong to our staff but only try to obtain from you a bank transfer."

55. The inability to retrieve the Renoir Transfers began to threaten the viability of the Indian operations connected to the Trust.

56. An August 19, 2018 internal Vital compliance email stated that "SBFP Bank [has] had our money since last year [and] [o]ur business in India is suffering and if we are unable to get funds transferred to the business by 1st September it will go bankrupt." A true and correct copy of this email is attached hereto as **Exhibit O**.

57. Although it has been more than a year since the Renoir Transfers, the Trustee has yet to locate and recover the $1.3 million Investment. SBFP has gone silent and governments and

legitimate banks have not assisted in recovering the funds, aside from providing the information discussed in this Declaration.

## The Contemplated Action in Guernsey

58. Applicants reasonably contemplate bringing Foreign Proceedings in Guernsey against those who committed the theft and fraud discussed herein.

59. Applicants have no knowledge of the *situs* of the $1.3 million Renoir Transfers, including but not limited to whether the money has been transferred to accounts controlled by those who perpetrated the fraud on behalf of SBFP and/or Credit Foncier.

60. Moreover, given that SBFP and Credit Foncier are not legitimate financial institutions, and therefore do not appear to hold any actual bank accounts in their possession, custody and control, Applicants also have no information as to the actual beneficiary bank of the Renoir Transfers.

61. Applicant likewise have no knowledge of the true identities of the individuals who own and/or control SBFP and/or Credit Foncier and whether these individuals hold accounts in their own names or through pseudonyms. Applicants are also without knowledge as to whether such individuals are beneficiaries of any monies stolen from the Cezanne Account.

62. In support of the contemplated Foreign Proceedings, the Applicants seek documents and electronic records concerning the location of the Renoir Transfers, the amounts, if any, in the Cezanne Account, the *situs* of the Investment, the original beneficiary bank, whether such amounts are held fraudulently by SBFP or Credit Foncier, and those entities and bank accounts which may be purported beneficiaries of any money stolen from the Cezanne Account.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 14, 2019.
St Peter Port, Guernsey

_____
LEE FALLA