Warren E. Gluck
Judith R. Nemsick
Elliot A. Magruder
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Phone: (212) 513-3200
Fax: (212) 385-9010
warren.gluck@hklaw.com
judith.nemsick@hklaw.com
elliot.magruder@hklaw.com
*Attorneys for Applicants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br>OPUS TRUSTEES LIMITED IN ITS CAPACITY AS TRUSTEE OF THE MANET TRUST and RENOIR INVESTMENTS LIMITED,<br><br>                    Applicants,<br><br>REQUEST FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782. | Civil Action No. 19-Misc. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF AN *EX PARTE*
APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................... ii

I.      PRELIMINARY STATEMENT ................................................................1

II.     JURISDICTION AND VENUE .................................................................4

III.    FACTUAL BACKGROUND .....................................................................4

      A.   The Parties ..........................................................................................4

      B.   The Cezanne Account Is Opened At SBFP ........................................6

      C.   Renoir Transfers $1.3 Million To Cezanne, But The Funds Are Inaccessible From The Cezanne Account ...........................................7

      D.   SBFP Refuses To Return The Funds To Cezanne Via Wire Transfer And Instead Issued A Cheque That Has Been Rejected By All UAE Banks ...............8

      E.   Applicants Confirm That SBFP And Credit Foncier Are Fraudulent Institutions .........................................................................................10

IV.     WIRE TRANSFER DISCOVERY ..........................................................11

V.      ARGUMENT ..........................................................................................11

      A.   THE STATUTORY REQUIREMENTS OF SECTION 1782 ARE SATISFIED ........................................................................................12

            1.   Applicants Are Each an Interested Person to the Foreign Proceeding ......13

            2.   The Discovery Sought Is Within this District ............................................14

            3.   The Discovery Is Sought for Use in a Foreign Proceeding ......................15

            4.   No Other Factors Weigh Against Allowing Discovery .............................17

      B.   APPLICANTS SATISFY INTEL'S DISCRETIONARY FACTORS .................17

      C.   THE COURT SHOULD EXERCISE ITS DISCRETION TO GRANT FOREIGN DISCOVERY ASSISTANCE ...........................................20

VI.     CONCLUSION .......................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,
    785 F. Supp. 2d 434, 437 (S.D.N.Y. 2011)...............................................................18

*Deposit Ins. Agency v. Leontiev*,
    No. 17-mc-00414, 2018 WL 3356083 (S.D.N.Y. July 23, 2018)...........................16

*Esses v. Hanania*,
    101 F.3d 873 (2d Cir. 1996)............................................................................13, 19

*In re Accent Delight Int'l Ltd.*,
    869 F.3d 121 (2d Cir. 2017)..........................................................12, 13, 16, 17, 18

*In re Application for Appointment of a Comm'r re Request for Judicial Assistance
    for the Issuance of Subpoena Pursuant to 28 U.S.C. 1782*,
    No. C 11-80136 RS MEJ, 2011 WL 2747302 (N.D. Cal. July 13, 2011) ...............20

*In re Application of 000 Promnefstroy*,
    134 F. Supp. 3d 789 (S.D.N.Y. 2017)....................................................................18

*In re Application of Aldunate*,
    3 F.3d 54 (2d Cir. 1993)..................................................................................12, 13

*In re Application of Malev Hungarian Airlines*,
    964 F.2d 97 (2d Cir. 1992)..............................................................................13, 17

*In re Application of The Mehta Int'l Ltd.*,
    No. 1:18-mc-00401 (S.D.N.Y. Aug. 30, 2018).................................................14, 15

*In re Catalyst Managerial Servs., DMCC*,
    680 Fed. Appx. 37 (2d Cir. 2017)..........................................................................14

*In re Furstenberg Finance SAS*,
    No. 18-mc-44 (JGK), 2018 WL 3392882 (S.D.N.Y. July 12, 2018)...........12, 14, 15

*In re Gianasso*,
    No. C 12-80029, 2012 WL 651647 (N.D. Cal. Feb. 28, 2012) ...............................20

*In re Godfrey*,
    526 F. Supp. 2d 417 (S.D.N.Y. 2007).....................................................................14

*In re Mangouras*,
    No. 17-mc-17, 2017 WL 4990655 (S.D.N.Y. Oct. 30, 2017).................................15

*In re Metallgesellschaft AG*,
    121 F.3d 77 (2d Cir. 1997)........................................................................................18

*In re O'Keeffe*,
    650 Fed. Appx. 83 (2d Cir. 2016) ....................................................................12, 18

*In re Sergeant*,
    278 F. Supp. 3d 814 (S.D.N.Y. 2017)....................................................................17

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004)....................................................12, 13, 14, 15, 18

*Maubeni Am. Corp. v. LBA Y.K.*,
    335 Fed. Appx. 95 (2d Cir. 2009) ...........................................................................17

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015)...................................................................16, 19, 20

**Statutes**

1 U.S.C. § 1 ......................................................................................................................14

28 U.S.C. § 1782 ................................................................................................... *passim*

Opus Trustees Limited ("Opus") in its capacity as trustee of The Manet Trust (the "Trust"), and Renoir Investments Limited ("Renoir"), an asset of the Trust (together, the "Applicants"), by and through their undersigned counsel, Holland & Knight LLP, submit this Memorandum of Law in support of their *Ex Parte* Application for Discovery Pursuant to 28 U.S.C. § 1782 (the "Application").

## I.    <u>PRELIMINARY STATEMENT</u>

This Memorandum is offered in support of Applicants' Section 1782 Application seeking discovery with respect to information and documents located in this District for use in a reasonably contemplated foreign proceeding in the island of Guernsey (hereinafter, "Guernsey") against individuals and entities that perpetrated a fraud and stole funds from Applicants beginning in November 2017 and that continues to the present (the "Guernsey Proceeding"). Applicants intend to bring the Guernsey Proceeding to recover the stolen funds from those responsible for perpetrating the fraud, as well as the beneficiaries of the fraud, including fictitious banks Société Bancaire et Fiduciarie Privée ("SBFP") and Credit Foncier Comoros ("Credit Foncier"), and which may also include, *inter alia*:

1. Federico Cappuzzo;

2. Société Bancaire et Fiduciarie Privée s.r.o.;

3. Credit Foncier International s.r.o;

4. Daria Chekhova;

5. Laura Meier;

6. Credit Foncier, Dubai UAE;

7. Kataryna Ryzovska; and

8. Additional unknown individuals and entities (together with SBFP and Credit Foncier, the "Fraud Beneficiaries").

Each of the Fraud Beneficiaries were part of a scheme to steal funds totaling more than $1.3 million from a UAE bank account held by a UAE special purpose entity named Cezanne Ltd. FZE ("Cezanne").  Cezanne is directly owned by Renoir and was established for the purposes of making an investment into an Indian company (the "Investment").  In order to be in a position to do so it opened a bank account at SBFP (the "Cezanne Account").  SBFP was presented by Cezanne to Renoir as a financial institution incorporated and legally registered under the laws of Moheli (also known as Mwali), an autonomous island in the Union of the Comoros (collectively, the "Comoros").  It turned out to be a bogus financial institution that presented a facade of legitimacy, but in fact duped unsuspecting clients such as the Applicants into transferring money to phony accounts allegedly opened at the bank.

Specifically, SBFP used a sham website, fake incorporation and registration documents, and fabricated investment marketing materials, to masquerade as a legitimate bank in order to fraudulently induce Applicants to open and electronically transfer significant sums of money to the Cezanne Account under the guise that the account would serve as a convenient conduit for the Investment.

In November 2017, Cezanne opened its account.  One month later, Renoir transferred the Investment funds totaling more than $1.3 million to Cezanne's account via two wire transfers. Wire transfer records from SBFP indicated that the funds had been deposited in the Cezanne Account.  However, when instructed to transfer the monies from the Cezanne Account to India, the transfer was unsuccessful.  SBFP, acting through certain of the individual Fraud Beneficiaries, had no explanation and refused to return the sums to the Applicants.  SBFP claimed it could not transfer the funds back and, instead, issued a cheque in the amount of $1.3 million to Cezanne from a different bank known as Credit Foncier.  No reputable financial institution has agreed to

accept the cheque, given the numerous objective indications that the cheque is fraudulent. Consequently, not only have Applicants failed to recover the Investment, but they have no information as to, *inter alia*, the account in which the funds are being held (neither at present nor at the time they transferred the funds into the Cezanne Account), the bank holding the account, the location of the account, and the owner of that account.

Moreover, Applicants face an additional challenge in understanding the location of the Investment funds, as the illegitimacy of SBFP and Credit Foncier as financial institutions almost certainly precludes a straightforward conclusion that the funds are, or were once held, at either SBFP or Credit Foncier.  In other words, the Investment funds have never been held at the financial institutions reputed to hold the Cezanne Account and take possession of the Investment. This opacity further obscures any tracing of the overall flow of funds, and hinders any efforts to establish a "starting point" for the flow of the funds.

In support of the Guernsey Proceeding against the Fraud Beneficiaries, Applicants seek an order authorizing them to issue and serve successive rounds of subpoenas for the production of documents, mainly business records and electronically stored information ("ESI") concerning wire transfers and account documents, that are located within the United States and within the possession, custody, and/or control of Bank of America N.A.; Bank of China; The Bank of New York Mellon; BNP Paribas; Citibank N.A. ("Citibank"); Commerzbank AG; Deutsche Bank Trust Company Americas ("DBTCA"); HSBC Bank (USA) N.A.; JPMorgan Chase Bank, N.A.; Societe Generale; Standard Chartered Bank; and UBS AG (collectively, the "New York Banks").

Pursuant to 28 U.S.C. § 1782, an applicant may be granted discovery in the United States in aid of a reasonably contemplated foreign proceeding if: (i) the applicant is an interested party to the contemplated proceeding; (ii) the individual or entity from which information is sought

resides or is found within the judicial district in which the applicant's application has been brought; and (iii) the requested discovery is "for use" in the reasonably contemplated foreign proceeding in front of a foreign tribunal.

As explained below, this Application seeking discovery in aid of the Guernsey Proceeding satisfies all of the requirements of Section 1782 along with the discretionary factors established by the United States Supreme Court.  It is respectfully submitted that discovery concerning the Fraud Beneficiaries, including the identities of the ultimate beneficiaries of the fraud, is both relevant and crucial to Applicants in connection with the Guernsey Proceeding.

## II.    JURISDICTION AND VENUE

Jurisdiction is proper pursuant to 28 U.S.C. § 1782 as this Application seeks discovery of documents and information primarily located within the Southern District of New York.  The discovery is necessary to assist Applicants in bringing the Guernsey Proceedings against the Fraud Beneficiaries.  Applicants are and were each a foreign business entity organized under the laws of a foreign state.  Venue in the Southern District of New York is appropriate pursuant to 28 U.S.C. § 1782 because the discovery is being sought from corporations within this judicial district, and the bulk of the discovery sought (namely documents) is located in this jurisdiction.

## III.    FACTUAL BACKGROUND

The facts giving rise to this Application are set forth in detail in the Declaration of Lee Falla, dated March 14, 2019 ("Falla Dec."), and the Declaration of Advocate Gavin Ferguson dated March 14, 2019 ("Ferguson Dec.").

### A.    THE PARTIES

Opus is a licensed trust company incorporated under the laws of Guernsey with registered offices in St. Peter Port, Guernsey.  Falla Dec., ¶ 6.  Opus is the trustee of the Trust, which was created by an instrument of settlement dated 21 January 2014 and made between (1) The Board of

the Monet Settlement as settlor; and (2) Opus. *Id.* at ¶ 5. The Trust is governed by the laws of Guernsey. *Id.*

Renoir is a limited company incorporated under the laws of Guernsey with registered offices in St. Peter Port, Guernsey. *Id.* at ¶ 7. The corporate directors of Renoir are Opus Management Limited and Plutus Limited, both of which are part of the wider Opus group. *Id.*

Cezanne is a company incorporated in the Fujairah Media Free Zone, United Arab Emirates ("**UAE**")) with its registered office in Fujairah, UAE. *Id.* at ¶ 8. Cezanne is permitted by its trade license to carry out business and management consultancy activities. *Id.* Cezanne is owned by Renoir and was established as an investment vehicle with the intention of making investments for the benefit of the Trust beneficiaries. *Id.*

Vital is a limited liability company formed under and governed by the laws of the UAE with its head office at Jumeirah Lake Towers, Dubai, UAE. *Id.* at ¶ 9. Vital provides comprehensive corporate services, including assistance with incorporating companies in the UAE Free Zones.[1] *Id.* Amanda Perry is the principal of Vital. *Id.* She also is the sole director of Cezanne and, as such, is responsible for the actions of Cezanne. *Id.* at ¶ 10.

SBFP is, upon information and belief, a fictitious offshore financial institution which falsely purports to be incorporated and legally registered under the laws of the Comoros. *Id.* at ¶ 11. According to its website (http://www.sbfprivee.com), SBFP is an "international financial institution that provides services to businesses and persons worldwide", including "current accounts … money transfers [and] payment services … operated by experienced professionals from world-class banks and financial institutions. *Id.* at ¶ 12. Its website also indicates that SBFP

---

[1] A "UAE Free Zone" is a special economic zone set up by the government of the UAE with the objective of offering tax concessions in order to benefit foreign investors. The UAE Free Zones are governed pursuant to a special framework of rules and regulations.

maintains a registered office at Rue Bandar Es Salam 10, Fomboni, Comoros, a representative office in Ukraine, and a correspondence address in Lithuania. *Id.*

Credit Foncier is, upon information and belief, a fictitious offshore financial institution which falsely purports to be incorporated and legally registered under the laws of the Comoros with a registered office at Place de France, Moheli, Comoros Islands. *Id.* at ¶ 13. According to its website (http://www.cfcomoros.com), Credit Foncier is "commercial and private banking for individuals and customers," which provides, among other services, international money transfers, letters of credit, and deposit accounts. *Id.* at ¶ 14. Credit Foncier purportedly maintains "contact centers" in Lithuania, Estonia and the UAE. *Id.*

According to public records, the website domain names for SBFP and Credit Foncier are each owned by Federico Cappuzzo. *Id.* at ¶ 15. He is also the sole shareholder and ultimate beneficial owner of Slovakian companies that have nearly the same names as SBFP and Credit Foncier: Société Bancaire et Fiduciaire Privée s.r.o. and Credit Foncier International s.r.o. *Id.*

### B.   THE CEZANNE ACCOUNT IS OPENED AT SBFP

In December 2017, the Trustee decided to invest slightly more than $1.3 million in an Indian company. To execute the Investment, Opus used funds held by Renoir, which company transferred the funds to Cezanne via two banks in the UAE (although in the end only one such UAE bank was used to route the funds). *Id.* at ¶ 17. The direct investment in the Indian company would be made by Cezanne through a recently opened bank account at SBFP. *Id.* at ¶ 18.

Vital advised Opus that it had received legal advice confirming the use of Cezanne as a suitable vehicle for investing in India. *Id.* Vital also allegedly performed due diligence on SBFP and informed Opus that: (1) it had opened multiple accounts for its clients at SBFP that were generally satisfied with its services; and (2) SBFP was optimal because accounts could be opened quickly and funds would be disbursed in short order. *Id.* at ¶ 19. Vital further advised that it had

met with SBFP in March 2017. At the meeting, SBFP gave a presentation that explained its offshore banking services and represented that it was duly licensed as an offshore financial institution in the Comoros and registered by the Mwali (Moheli) International Services Authority. *Id.* at ¶ 20. Unknown to Applicants, SBFP's representations were outright falsehoods later contradicted by a Comorosian government official. *Id.* at ¶¶ 48-49.

In November 2017, Vital opened the Cezanne Account. *Id.* at ¶ 21. On November 23, 2017, Vital received an email from Daria Chekhova, a purported Client Relationship Manager at SBFP, claiming that the Cezanne Account had been opened. Vital also corresponded with Laura Meier, the purported International Business Development Manager at SBFP. *Id.* at ¶ 22. Ms. Chekhova advised Vital that the first transfer would need to be made into the Cezanne account within two weeks of the account opening. *Id.* at ¶ 23.

### C.   RENOIR TRANSFERS $1.3 MILLION TO CEZANNE, BUT THE FUNDS ARE INACCESSIBLE FROM THE CEZANNE ACCOUNT

On December 7, 2017, Renoir transferred the $1.3 million to Cezanne in two tranches via a UAE bank (together, the "Renoir Transfers"). *Id.* at ¶ 24. The Renoir Transfers have payment details that reference Cezanne. The beneficiary bank of the Renoir Transfers is "Credit Foncier, Dubai UAE," even though the payment instructions directed the funds to be disbursed to the Cezanne Account *at SBFP*. *Id.* at ¶¶ 25-26. No explanation was provided for this suspicious discrepancy. *Id.* at ¶ 26.

According to the payment instructions accompanying the Renoir Transfers, Citibank, New York ("Citibank") is the correspondent bank for the first Renoir Transfer, and Deutsche Bank Trust Company Americas ("DBTCA") is the correspondent bank for the second Renoir Transfer. *Id.* at ¶ 27. As matters transpired, the second transfer, which was intended to pass through DBTCA and

Mashreq Bank, was treated as null and void and was instead routed through Citibank and Noor Islamic Bank. *Id.* at ¶ 30.

Neither Opus nor Cezanne received a SWIFT transfer confirmation from Citibank, even though both SBFP and Credit Foncier claim on their websites to be participants in the SWIFT clearinghouse.[2] *Id.* at ¶ 28. Wire transfer instructions sent by SBFP confirm that DBTCA and Citibank were the intended correspondent banks for the Renoir Transfers, although only Citibank actually acted as such. *Id.* at ¶¶ 29-30.

On December 17 and 20, 2017, Vital confirmed that the Renoir Transfers had seemingly been deposited in the Cezanne Account. *Id.* at ¶¶ 30-31. On December 21, 2017, Vital attempted to transfer the Investment funds out of the Cezanne Account. For unknown reasons, this transfer was unsuccessful. *Id.* at ¶ 33. Vital contacted SBFP on multiple occasions seeking an explanation for the inaccessibility of the funds in the Cezanne Account. *Id.* at ¶ 34.

### D.    SBFP REFUSES TO RETURN THE FUNDS TO CEZANNE VIA WIRE TRANSFER AND INSTEAD ISSUED A CHEQUE THAT HAS BEEN REJECTED BY ALL UAE BANKS

While Cezanne was trying to locate and access the funds in the Cezanne Account, the investment opportunity in India was otherwise fulfilled. *Id.* at ¶ 35. Because the funds in the Cezanne Account had been transferred solely for purposes of the Investment, Opus directed SBFP to repay the funds to the Cezanne Account. *Id.* at ¶ 36.

After months of silence, SBFP refused and instead offered to issue Cezanne a cheque, originating from a purportedly legitimate account at Credit Foncier. *Id.* at ¶ 37. After Cezanne objected, Kataryna Ryzovska, a purported Client Relationship Manager at SBFP, claimed that only

---

[2] *See* The Clearing House, https://www.theclearinghouse.org/payments/chips (last visited March 18, 2019) (generally describing the CHIPS system); The Clearing House, https://www.theclearinghouse.org/payments/chips/helpful-info (last visited March 18, 2019) (providing a list of customers, including the New York Banks).

a cheque could be issued to Cezanne due to Vital's "refusal to provide information reasonably requested by SBFP [and] refusal to cooperate with SBFP in [an] investigation of violations." *Id.* at ¶ 38.  Ms. Ryzovska provided no evidence to support these allegations and declined to elaborate in response to subsequent inquiries.  She also advised that "the compliance department has resolved to close the account Cezanne [sic]." *Id.*

In response, Vital advised that it had not received a request for cheque details and the Renoir Transfers were only purportedly "recredited" to the Cezanne Account two days beforehand. *Id.* at ¶ 39.  Neither SBFP nor Credit Foncier explained what a "recrediting" entailed, and how that would facilitate the return of the Investment.  On April 16, 2018, Ms. Ryzovska emailed Vital stating that the cheque would be "issued in the name of the company the corporate bank account was opened for." *Id.* at ¶ 40.   On April 20, 2018, Credit Foncier ‒not SBFP‒ issued a cheque to Cezanne in the amount of $1,305,017.08 (the "**Cheque**").[3]  *Id.* at ¶ 41.

SBFP provided no explanation as to why the Cheque was issued by Credit Foncier.  This was blatantly suspicious, given that SBFP had confirmed that: (1) it held the Cezanne Account; (2) Vital accessed the Cezanne Account through SBFP's website; and (3) a "client relationship manager" at SBFP, not Credit Foncier, purportedly "closed" the account.  *Id.* at ¶ 43.

All banks in the UAE refused to cash the Cheque.  The Cheque would not clear any bank's internal compliance protocols.  *Id.* at ¶ 44.  Vital repeatedly notified SBFP that multiple banks refused to clear the Cheque and, thus, requested that SBFP disburse the Investment via wire transfer.  *Id.* at ¶ 45.  On July 30, 2018, the "Compliance Department" at SBFP told Vital that "unfortunately we need to notice that the only possible way to give your funds back is by cheque. Any transfers are not possible." *Id.* at ¶ 46.

---

[3] The contact information for the Credit Foncier issuer included the email address "info@creditfoncierkm.com" and the website http://www.creditfoncierkm.com.  As of March 18, 2019, this domain name cannot be found.

E.   **APPLICANTS CONFIRM THAT SBFP AND CREDIT FONCIER ARE FRAUDULENT INSTITUTIONS**

Realizing that both SBFP and Credit Foncier were almost certainly sham banks that had stolen the $1.3 million in the Cezanne Account, Vital contacted government agencies in the Comoros and the UAE (in the latter case via its online portal).  *Id.* at ¶ 47.  On August 6, 2018, an Honorary Counsel at the Comoros Embassy in London responded that "[t]here are a number of clear indicators that you and/or your client may have been the subject[] of a scam."  *Id.* at ¶ 48.

According to the Honorary Counsel:

a.   There are no "off-shore" banks or any such similar service providers in the Comoros.
b.   SBFP does not appear on the Central Bank's list of accredited and licensed banks in the Comoros.
c.   Their Contacts page only offers Skype communication.
d.   Their listed numbers are in the UK and South Africa.  Nobody answers the UK number and it is diverted to a mobile number.
e.   Their [Know-Your-Customer documentation] is not compliant as they process everything through e-mail not [via] the required examination of the original.
f.   Their website … corresponds with [an] IP address … registered in Stockholm, Sweden, and hosts other seemingly dubious websites.

*Id.* at ¶ 48.  Accordingly, the Comoros Embassy found no "direct Comoros nexus" and suggested that Vital contact the police in the UAE.  *Id.* at ¶ 50.  The UAE central bank did not respond to inquiries from Vital.  *Id.* at ¶ 51.

Vital also contacted Credit Foncier de France ("**Credit Foncier France**"), a well-known commercial mortgage bank and a subsidiary of a French banking group that serves nearly 40 million customers.  *Id.* at ¶ 52.  On September 11, 2018, a Credit Foncier France employee informed Vital that SBFP and Credit Foncier are "a fraud" and that the documents submitted by SBFP to induce the Investment were "forgeries."  *Id.* at ¶ 53.  The same employees explained that Credit Foncier France "only …  grant[s] real estate loans" and therefore it does not "open, and never have neither [sic] any account to receive funds."  *Id.* at ¶ 54.  Accordingly, Credit Foncier

10

France's name was "used illegally … to get money" and that "these usurpers do not belong to our staff but … try to obtain … a bank transfer." *Id.*

The inability to recoup the Investment has threatened the viability of the Indian operations of the Trust. *Id.* at ¶¶ 55-56. Although it has been more than a year since the Renoir Transfers, the Applicants have yet to locate and recover the $1.3 million in the Investment. *Id.* at ¶ 57. Although SBFP and Credit Foncier each continue to maintain a website and presence on social media, they have gone silent and are unresponsive to Applicants. *Id.* Governments and legitimate banks have not assisted in recovering the funds, aside from providing the information discussed in this Application.

## IV.  **WIRE TRANSFER DISCOVERY**

The New York Banks reside or are found within the Southern District of New York. *See* Declaration of Warren E. Gluck, dated March 28, 2019 ("Gluck Dec."), ¶ 11. In this matter, discovery is sought from the New York Banks concerning the identity of those who perpetrated the fraud, their relationship to the Fraud Beneficiaries, and the identities of the ultimate beneficiaries of the fraud. The wire-transfer records should identify wire transfers indicating where the Fraud Beneficiaries and their corresponding bank accounts are located, as well as where the Fraud Beneficiaries and their corresponding bank accounts are listed as originators of transfers to the ultimate beneficiaries of the fraud. Wire transfer records pertaining to this information will help identify the individuals and entities to sue in the Guernsey Proceeding and also assist in tracing the funds and locating assets in order to recover the stolen funds.

## V.  **ARGUMENT**

Applicants bring this *ex parte* Application pursuant to 28 U.S.C. § 1782. "[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*."

*In re O'Keeffe*, 650 Fed. Appx. 83, 85 (2d Cir. 2016) (quoting *Gushlak v. Gushlak*, 486 Fed. Appx. 215, 217 (2d Cir. 2012)).

Section 1782 authorizes the Court, upon the application of an interested person, to order a resident of the district to give testimony or produce documents for use in a foreign proceeding. The statute provides:

> The District Court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusations. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a). It is within the Court's discretion to grant a Section 1782 Application. *In re Application of Aldunate*, 3 F.3d 54, 62 (2d Cir. 1993); *see also In re Furstenberg Finance SAS*, No. 18-mc-44 (JGK), 2018 WL 3392882, at *3 (S.D.N.Y. July 12, 2018) (quoting *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2017)) (same).

For the reasons set forth below, the Court should grant this Application because the statutory requirements are met, the discretionary considerations favor the Application, and granting the Application would further the twin aims of Section 1782.

A.  <u>**THE STATUTORY REQUIREMENTS OF SECTION 1782 ARE SATISFIED**</u>

The United States Supreme Court has broadly interpreted Section 1782 in accordance with the statute's Congressional intent. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004); *see also In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 134 (2d Cir. 2017) (citing *Intel*, 542 U.S. at 247-49) ("The availability of Section 1782 discovery therefore is quite broad and only

has broadened through successive amendments over the years."). "In consequence, the role of the district courts as gatekeepers is paramount." *In re Accent Delight,* 869 F.3d at 134 (citation omitted).

In determining that Section 1782 authorizes a federal district court to provide discovery assistance, the Supreme Court adopted a liberal interpretation of the statute and provided guidelines for its application by the district courts. *See Intel*, 542 U.S. at 256.

Applicants satisfy each of the statutory requirements of Section 1782, which are:

> (1) the person from whom discovery is sought must reside in or be found in the district of the district court to which the application is made, (2) the discovery must be "for use in a proceeding in a foreign or international tribunal," and (3) the application must be made "by a foreign or international tribunal" or by "any interested person."

*Aldunate*, 3 F.3d at 62 (*quoting* 28 U.S.C. § 1782).

Applicants are interested persons to the foreign proceedings; the persons or entities with possession, custody, and/or control of the discovery sought (*i.e.*, the New York Banks) are found within this District; and the evidence is sought for use in a reasonably contemplated foreign proceeding, which will be held before a foreign tribunal. Thus, the Court should enter an order allowing discovery for use in the Guernsey Proceeding.

### 1.    <u>Applicants Are Each an Interested Person to the Foreign Proceeding</u>

Applicants will jointly bring a foreign civil proceeding against the Fraud Beneficiaries who participated in the scheme to steal the Investment funds from the Cezanne Account. As Applicants will each be a party to the foreign proceeding, they are each clearly an "interested person" as that term is used in 28 U.S.C. § 1782. *See, e.g., Application of Esses*, 101 F.3d 873, 875 (2d Cir. 1996); *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 101 (2d Cir. 1992). Corporations and business entities qualify as a "person" under Section 1782, as the United States Code defines a

"person" to include "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals."  1 U.S.C. § 1.

The Supreme Court's decision in *Intel* highlights the broad applicability of this standard, recognizing the definition of an interested party to be any person who "possess[es] a reasonable interest in obtaining [judicial] assistance."  *Intel*, 542 U.S. at 256.  Here, Applicants are reasonably contemplating a foreign proceeding in Guernsey arising out of the establishment of two sham banks used to sequester and misappropriate the more than $1.3 million deposited by Renoir into the Cezanne Account and, therefore, the Applicants possess a reasonable interest in obtaining assistance recognized under Section 1782.

### 2.    The Discovery Sought Is Within this District

The New York banks from which discovery is sought "reside" or are "found" in this District and the documents and evidence sought are located here as well.  A company is found where it is incorporated, headquartered, or where it is engaged in "systematic and continuous activities."  *In re Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) (citation omitted).  Although the statute is silent as to the location of the material sought, the "bulk of authority in this Circuit" requires that the material be located in the United States.  *Id.* at 423.

This Court has granted similar applications seeking intermediary bank discovery from the New York Banks, acknowledging that the discovery sought from the New York Banks is within this District.  *See, e.g., In re Application of The Mehta Int'l Ltd.,* No. 1:18-mc-00401 (S.D.N.Y. Aug. 30, 2018) (authorizing wire transfer discovery from same New York Banks to assist in contemplated Bermuda proceeding); *In re Furstenberg Fin.*, 2018 WL 3392882, at *3 (authorizing discovery from all New York Banks listed in this Application); *see also In re Catalyst Managerial Servs., DMCC*, 680 Fed. Appx. 37, 38 (2d Cir. 2017) (affirming order compelling document discovery of wire transfers from sixteen banks in this District).

14

Indeed, this case is similar to *In re Application of The Mehta Int'l Ltd., supra,* where the court authorized discovery to assist two Bermuda companies pursue contemplated claims in Bermuda after being fraudulently duped by phony emails and invoices into transferring significant sums of money to foreign bank accounts.  As in *The Mehta Int'l Ltd.*, Applicants here seek discovery to help identify the perpetrators of the fraud and the location and movement of the stolen funds.  Applicants seek the production of the same documents by the same New York Banks.  Each of the New York Banks has an office in this District and maintains the records requested.  The New York Banks maintain electronic records of fund transfers and are able to easily search and produce these records.  Responses to past subpoenas seeking similar records indicate that the records may be produced, without objection, in as little as two weeks.  Applicants anticipate serving the New York Banks with subpoenas in this District upon the Court's issuance of an order authorizing discovery.

### 3.        The Discovery Is Sought for Use in a Foreign Proceeding

Applicants seek discovery "for use in a proceeding in a foreign or international tribunal," specifically, the reasonably contemplated Guernsey Proceeding.  The Supreme Court in *Intel* explained that this requirement is met when "the proceeding for which discovery is sought under § 1782(a) [is] within reasonable contemplation, but need not be pending or imminent."  542 U.S. at 243 (citation and quotations omitted).   "[W]here an applicant has not yet initiated a foreign proceeding, discovery is available when the materials may help the applicant either to plead or to prove the anticipated claims." *In re Mangouras*, No. 17-mc-17, 2017 WL 4990655, at *5 (S.D.N.Y. Oct. 30, 2017) (citing *Mees v. Buiter*, 793 F.3d 291, 298-299 (2d Cir. 2015)).  The applicant simply must provide "some objective indicium that the action is being contemplated … [and] the proceedings cannot be merely speculative." *Furstenberg Fin.*¸ 2018 WL 3392882, at *4 (citation omitted).

As set forth in the Ferguson Declaration, Applicants reasonably contemplate bringing foreign proceedings in Guernsey against the perpetrators and beneficiaries of the wire fraud for claims including civil fraud and unjust enrichment, as well as for declaratory and other relief available pursuant to the Trusts Law.  Ferguson Dec., ¶¶ 22-25.  These claims are recognized under Guernsey law.  *Id.*  In order to bring such actions, Applicants require information concerning the identity of the perpetrators and beneficiaries of this bank fraud and the movement of the funds.

Like the other statutory factors, the "for use" requirement of a Section 1782 application has been interpreted broadly by both the Supreme Court and courts in the Second Circuit.  To that end, discovery sought pursuant to Section 1782 "need not be *necessary* for the party to prevail in the foreign proceeding in order to satisfy the statute's 'for use' requirement."  *Mees*, 793 F.3d at 298 (emphasis added).  "Notably, § 1782 makes no mention of necessity, and in several other contexts . . . the Supreme Court ha[s] declined to read into the statute requirements that are not rooted in its text."  *Id.* (footnote omitted) (*citing, e.g.*, *Intel*, 542 U.S. at 260, *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012)).

"Rather, the term 'for use' in Section 1782 has only its ordinary meaning – that the requested discovery is something that will be employed with some advantage or serve some use in the proceeding."  *Accent Delight*, 869 F.3d at 132 (internal quotation marks and citation omitted); *see also Deposit Ins. Agency v. Leontiev*, No. 17-mc-00414, 2018 WL 3356083, at *4 (S.D.N.Y. July 23, 2018) (when deciding the "for use" requirement, "the relevant inquiry … is whether there is an actually an ongoing (or imminent) proceeding, not that the validity of the proceeding itself").

Here, the discovery is necessary to the Guernsey Proceeding because it will aid Applicants in identifying the appropriate parties to the action, tracing the movement of the funds from the Renoir Account to accounts at legitimate banks, and locating assets of the Fraud Beneficiaries.

Additionally, the discovery sought in this Application will form the basis for understanding the mechanics of the fraud and providing proof for these claims in the Guernsey Proceeding.  *See also, e.g., Accent Delight*, 869 F.3d at 132-33 (discovery would be for use in a foreign proceeding if it "tends to prove … alleged fraud against [the applicants]"); *In re Sergeant*, 278 F. Supp. 3d 814, 821 (S.D.N.Y. 2017) (requested discovery would be for use in a foreign proceeding if it was used to "piec[e] together the sequence of … fraud" and to "trac[e]  …. assets to aid in the [furtherance of the foreign] proceeding").

### 4.     No Other Factors Weigh Against Allowing Discovery

In addition to satisfying Section 1782's requirements, there are no factors that would support the denial of discovery in this matter.  In deciding Section 1782 applications, the Second Circuit has emphasized consideration of the statute's twin aims of:

> providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign courts by example to provide similar means of assistance to our courts.

*Malev*, 964 F.2d at 100.  Both of these goals will be fulfilled by granting the requested discovery. The discovery sought is the most efficient way to identify who received the stolen Investment funds, where the funds were actually held once transferred by Renoir (given that neither SBFP nor Credit Foncier appear to be legitimate financial institutions), and who perpetrated the fraud. Allowing discovery here also will encourage foreign courts to provide similar assistance in U.S. actions, as claims of fraud are as old as time, and the interconnectedness of the global financial system necessitates litigation in numerous jurisdictions throughout the world.  Thus, the goals of the statute will be accomplished by granting this Application.

### B.     APPLICANTS SATISFY INTEL'S DISCRETIONARY FACTORS

Once the statutory requirements are met, the Court may exercise its discretion in the manner specified by the Second Circuit.  *See, e.g., Maubeni Am. Corp. v. LBA Y.K.*, 335 Fed.

Appx. 95, 96 (2d Cir. 2009) ("Once the statutory requirements are met, a district court is free to grant discovery at its discretion."); *In re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997) (instructing district courts to exercise their discretion in light of the Section 1782's twin aims). "Misuse" of Section 1782 discovery "can be avoided through the prudent exercise" of the district court's discretion. *Accent Delight*, 869 F.3d at 133 (citing *Intel*, 542 U.S. at 264).

> In *Intel*, the Court identified four factors to consider when granting a Section 1782 request:
>
> (1) whether the person from whom discovery is sought is a participant in the foreign proceeding;
>
> (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government, court, or agency to federal-court judicial assistance;
>
> (3) whether the Section 1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States; and
>
> (4) whether the discovery requests are unduly intrusive or burdensome.

*Intel*, 542 U.S. at 264-65.  The discretionary factors weigh in favor of granting the Application.

First, granting Applicants' request for relief is consistent with the guidance provided by the *Intel* court because none of the New York Banks are, or will be, parties to or participants in the Guernsey Proceeding.  *See, e.g., In re O'Keeffe*, 650 Fed. Appx. 83, 84 (2d Cir. 2016) (that discovery target is non-party to Hong Kong defamation litigation weighs in favor of granting discovery); *In re Application of 000 Promnefstroy*, 134 F. Supp. 3d 789, 792 (S.D.N.Y. 2017) (first discretionary factor favors the applicant when the target is a non-party and "the information resides with him").

As such, Applicants would be unable to obtain discovery from the New York Banks in the contemplated foreign proceedings in Guernsey given a lack of jurisdiction over New York Banks in Guernsey.  *See Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,

785 F. Supp. 2d 434, 437 (S.D.N.Y. 2011) (noting that under *Intel*, "there is a greater need for § 1782 aid when the respondent is a non-participant, because a foreign tribunal has jurisdiction over those appearing before it and can itself order them to produce evidence") (internal quotations omitted).

Second, the nature of the Guernsey Proceeding does not implicate any factor or policy that would weigh against granting this request.  Instead, the nature of the reasonably contemplated foreign proceedings – including a civil proceeding similar to one that would be brought in U.S. Courts – weighs in favor of granting Applicants' request.

Third, the information sought is narrowly tailored and necessary to identify the defendants in the Guernsey Proceeding and to trace and recover the stolen funds, and is akin to the discovery devices allowable in a Guernsey proceeding.  Ferguson Dec., ¶ 28.  "[O]nly upon authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782, should a district court refrain from granting the assistance offered by the act." *Esses v. Hanania*, 101 F.3d 873, 876 (2d Cir. 1996); *see also Mees*, 793 F.3d at 303 ("Again, § 1782 contains no foreign-discoverability requirement.").  Here, because this proceeding is brought in the context of a civil action on claims recognized by Guernsey law, there is no proof that a foreign tribunal would reject such evidence.

Fourth, the requests are neither unduly intrusive nor burdensome.  The New York Banks maintain these records and they easily may search for and produce them.  Furthermore, the records sought in the 1782 Application are neither cumulative nor irrelevant.  The Applicants have not received access to the records and account information of the Fraud Beneficiaries.  Accordingly, the records sought are highly relevant, if not essential, to the Foreign Proceeding since they would

identify the perpetrators of the fraud and the ultimate recipients of the stolen funds.  *See Mees*, 793 F.3d at 302 n.18 (citation omitted).

Finally, U.S. courts have recognized the propriety of granting Section 1782 applications where the applicant seeks discovery to determine the identity of parties against whom foreign proceedings are contemplated.  *See, e.g., In re Gianasso*, No. C 12-80029, 2012 WL 651647, at *2 (N.D. Cal. Feb. 28, 2012) (granting application for discovery of identity of anonymous poster on Glassdoor.com website where identity was necessary to pursue Swiss civil defamation proceeding); *In re Application for Appointment of a Comm'r re Request for Judicial Assistance for the Issuance of Subpoena Pursuant to 28 U.S.C. 1782*, No. C 11-80136 RS MEJ, 2011 WL 2747302, at *7 (N.D. Cal. July 13, 2011).  This Court, indeed, has repeatedly recognized the propriety of granting Section 1782 applications where the applicant seeks discovery of wire transfers and banking information that would assist in bringing a foreign proceeding.  Gluck Dec., ¶¶ 22-36 and exhibits thereto.

## C. THE COURT SHOULD EXERCISE ITS DISCRETION TO GRANT FOREIGN DISCOVERY ASSISTANCE

The Court should grant this Application, which seeks discovery in aid of Applicants' investigation of and commencement of a civil proceeding against the fraud perpetrators and beneficiaries in Guernsey.  Applicants seek evidence in the possession, custody, or control of the New York Banks, that will be relevant, important, and useful to Applicants' claims for the following purposes:

      i.      locating the Fraud Beneficiaries' bank accounts;

      ii.     determining the bank that actually held the Investment;

      iii.    determining the account details of the account that actually held the Investment;

iv.    determining whether the entities that purportedly received the fraudulent wire transfers were the actual beneficiaries of the fraud;

v.    identifying and locating the ultimate beneficiaries of the fraud;

vi.    identifying and locating the perpetrators of the fraud;

vii.    tracing and locating the stolen funds; and

viii.    locating assets in order to recover the funds.

Obtaining this information will require the issuance and service of successive subpoenas seeking production of wire transfer activity of the Fraud Beneficiaries and their corresponding bank accounts.

## VI.    CONCLUSION

In sum, the facts in this matter satisfy the requirements of 28 U.S.C. § 1782 as well as the discretionary factors, and the granting of the requested discovery furthers the statute's goals. Accordingly, consistent with the precedent cited above, this Section 1782 Application should be granted.

Dated:  New York, New York
          March 28, 2019

HOLLAND & KNIGHT LLP

By:   /s Warren E. Gluck
        Warren E. Gluck
        Judith R. Nemsick
        Elliot A. Magruder
        31 West 52nd Street
        New York, New York 10019
        Phone: (212) 513-3200
        Fax: (212) 385-9010
        warren.gluck@hklaw.com
        judith.nemsick@hklaw.com
        elliot.magruder@hklaw.com

        *Attorneys for Applicants Opus Trustees*
        *Limited in its capacity as trustee of The*
        *Manet Trust* and *Renoir Investments Limited*

21